**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| JANICE STEWART, *et al.*, | : | | |
| Plaintiffs, | : | CIVIL ACTION | |
| | : | | |
| v. | : | No. 23-0295 | |
| | : | | |
| COMMONWEALTH OF | : | | |
| PENNSYLVANIA, *et al.*, | : | | |
| Defendants. | : | | |

**ORDER**

AND NOW, this _____ day of _____, 2023, upon consideration of Defendants' Motion to Dismiss Complaint and Plaintiff's response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**. It is FURTHER **ORDERED** as follows:

1.  Plaintiff's claims against Defendants Commonwealth of Pennsylvania, Tom Wolf in his official capacity, John Fetterman in his official capacity, and Brandon Flood in his official capacity are **DISMISSED with prejudice** due to Eleventh Amendment immunity.

2.  Plaintiff's causes of action under the Fourth and Fifth Amendments (Counts I-IV of the Complaint) are **DISMISSED with prejudice**.

3.  Plaintiff's *Monell* claims against the Commonweatlh (Counts II, IV, VI and VIII) are **DISMISSED with prejudice**.

4.  Due to the lack of a plausible federal claim and/or the lack of clearly established law, Defendants are entitled to qualified immunity; thus, Defendants Wolf, Fetterman and Flood in their individual capacities are immune from this lawsuit and shall be **TERMINATED** as parties to this action.

5.      Defendants Wolf, Fettterman and Flood are not proper parties to Plaintiff's ADA claim (Count IX), which is **DISMISSED with prejudice** as to the individual defendants.

6.      Plaintiff's ADA claim against the Defendant Commonwealth is **DISMISSED** without prejudice.

**BY THE COURT:**

_____

**MICHAEL M. BAYLSON, U.S.D.J.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANICE STEWART, *et al.*, | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-0295 |
| | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, *et al.*, | : | |
| Defendants. | : | |

## **DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Defendants Commonwealth of Pennsylvania, Tom Wolf in his official capacity, John Fetterman in his official capacity, and Brandon Flood in his official capacity, by their undersigned counsel, hereby move this Court pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss Plaintiff's claims as against them due to Eleventh Amendment immunity. In addition, all Defendants hereby move to dismiss Plaintiff Janice Stewart's Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). The reasons for this motion are explained in the accompanying memorandum of law.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

Date: June 13, 2023                By:    */s/ Matthew Skolnik*

Matthew Skolnik
Office of Attorney General           Senior Deputy Attorney General
1600 Arch Street, Suite 300          Attorney I.D. No. 89423
Philadelphia, PA 19103
Phone: (215) 560-2136
Fax:    (717) 772-4526               Karen M. Romano
mskolnik@attorneygeneral.gov         Chief Deputy Attorney General
                                     Civil Litigation Section

                                     *Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANICE STEWART, *et al.*, | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-0295 |
| | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Defendants Commonwealth of Pennsylvania, Tom Wolf, John Fetterman, and Brandon

Flood, by and through their undersigned counsel, respectfully submit this memorandum of law in

support of their Motion to Dismiss Plaintiff Janice Stewart's Complaint.

**I.      FACTS**

Plaintiff has brought this lawsuit seeking money damages against the state itself, former

Governor Tom Wolf, former Lieutenant Governor John Fetterman (who also is being sued in his

official capacity as the former Chair of the Commonwealth's Board of Pardons, *see* Compl., ¶ 5),

and Brandon Flood, former Secretary of the Board of Pardons. All defendants are being sued in

both their individual and official capacities. Compl., ¶¶ 3-6.

Plaintiff's father, Bruce Norris, was serving a life sentence in state prison when he died at

the age of 69 on January 30, 2021. *See* Complaint, ¶¶ 10, 15; *see also* Ex. B to Compl.  More

than a month earlier, on Dec. 19, 2020, Pennsylvania's Board of Pardons, defendant Fetterman,

and defendant Flood approved Mr. Norris' application for pardon or clemency or commutation

of his life sentence. Compl., ¶ 11.[1]

---

[1] It is unclear from the Complaint whether the Board recommended a pardon or clemency or commutation
of Norris' sentence, or some combination of the three.

At some unspecified point during the above 41-day time period, Norris became infected with Covid-19 while sharing a two-person cell at SCI Phoenix and while awaiting the defendant former Governor's signature on the Board of Pardons' recommendation. Compl., ¶ 15; *see also* Ex. A to Compl. ("Norris finally got the board's approval on Dec. 19, 2020 – but joined 13 other lifers who were all waiting for Gov. Tom Wolf to act on the recommendation."). Norris was "at risk of being infected with the Covid-19 virus and/or dying from the same, given [his] . . . record of comorbidities." Compl., ¶ 14.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1), Lack of Subject Matter Jurisdiction

A Federal Rule of Civil Procedure 12(b)(1) motion is the proper mechanism for raising the issue of whether Eleventh Amendment immunity bars federal jurisdiction. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)) (Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction). When a motion to dismiss is based on lack of subject matter jurisdiction in addition to other defenses, "[a]n actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of the case." *Tagayun v. Stolzenberg*, 239 Fed. Appx. 708, 710 (3d Cir. 2007); *Kehr Packages, Inc. v. Fidelcor*, 926 F.2d 1406, 1409 (3d Cir. 1991).

### B. Rule 12(b)(6), Failure to state a claim

Under Fed. R. Civ. P. 8, following the Supreme Court decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), pleadings standards in federal court have shifted from simple notice pleading to a more heightened form of pleading that requires a plaintiff to plead more than the possibility of relief to survive a motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009);

*Phillips v. County of Allegheny*, 515 F. 3d 224, 230 (3d Cir. 2008).

It is "no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of the proscribed conduct." *Id.* at 233 (citing *Twombly*) (cleaned up). Thus, when presented with a motion to dismiss for failure to state a claim, the district court should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The court accepts the complaint's well-pleaded facts as true but should disregard legal conclusions. *Iqbal*, 556 U.S. at 678-79. Second, the court determines whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* A complaint must do more than allege the plaintiff's entitlement to relief; it must "show" such an entitlement with its facts. *Id.*; *see Phillips*, 515 F.3d at 234-35; *Santiago v. Warminster Twp.*, 629 F. 3d 121, 130 (3d Cir. 2010). In ruling on a motion to dismiss under Rule 12(b)(6), a court should "draw on its judicial experience and common sense" and dismiss claims where the facts merely suggest a possibility of liability, rather than "plausibly establish" it. *Iqbal*, 129 S.Ct. at 1950-51.

The defense of qualified immunity is not merely a defense to liability, but immunity from suit. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability[,] it is effectively lost if a case is erroneously permitted to go to trial." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell*, 472 U.S. at 526). Due to the foregoing, "determining whether officials are entitled to qualified immunity should be determined as early as possible." *Martin-McFarlane v. City of Philadelphia*, 299 F.Supp.3d 658, 668 (E.D. Pa. 2017). On a Rule 12(b)(6) motion, the defendant must show an entitlement to qualified immunity based "on the face of the complaint." *See id.*

III.    **ARGUMENT**

Section 1983 provides a cause of action against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The statute "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a § 1983 claim, a plaintiff must allege facts showing that a person acted under color of state law to deprive the plaintiff of a right secured by the Constitution or federal law. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

A.    **Defendants are entitled to Eleventh Amendment Immunity.**

The Court lacks subject matter jurisdiction over all Section 1983 claims against the Commonwealth of Pennsylvania, which is entitled to Eleventh Amendment immunity from Counts I through VIII. The same reasoning, as explained below, applies to all of Plaintiff's claims against defendants Wolf, Fetterman and Flood in their official capacities as (former) state officials.

Absent consent by the State, the Eleventh Amendment[2] bars suits in federal court by a private party against states, state agencies and state officials in their official capacities. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-70 (1997); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst*, 465 U.S. at 100-01. Eleventh Amendment immunity protects a state from suit regardless of whether the plaintiff is a citizen of that state. *Id.* at 100. The bar extends to suits against departments or agencies of the state having no existence apart from the

---

[2] The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

state. *Laskaris v. Thornburgh*, 661 F. 2d 23, 25 (3d Cir. 1981). As when the state itself is named as the defendant, the Eleventh Amendment bars a suit against a state agency or official in his official capacity – regardless of whether the requested relief is monetary, injunctive or declaratory where the state is the real party in interest. *Coeur d'Alene Tribe*, 521 U.S. at 270; *Seminole Tribe*, 517 U.S. at 58; *Pennhurst*, 465 U.S. at 101-02; *Edelman v. Jordan*, 415 U.S. 651, 663, 667 (1974).

A state may consent to be sued in federal court, *Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 72-73 (2000), but such consent must be "unequivocally expressed." *Pennhurst*, 465 U.S. at 99. Plaintiffs "may not sue a state in federal court without the latter state's consent unless Congress abrogates the state's Eleventh Amendment immunity pursuant to a constitutional provision granting Congress that power." *Chittister v. Dep't of Comm. & Economic Devel.*, 226 F.3d 223, 226 (3d Cir. 2020). On the contrary, first, Pennsylvania has withheld consent to lawsuits brought under 42 U.S.C. § 1983. *See* 42 Pa. C.S. § 8521(b); *Laskaris*, 661 F. 2d at 25. Second, as against the Commonwealth, its agencies or state officials in their official capacities, Congress has not abrogated Eleventh Amendment immunity for § 1983 claims. *See Quern v. Jordan*, 440 U.S. 332, 341-42 (1979). Neither supplemental jurisdiction nor any other basis of jurisdiction overrides the bar. *Pennhurst*, 465 U.S. at 121.

It is well-established that courts should look to whether the sovereign is the "real party in interest" to determine whether Eleventh Amendment immunity bars the suit. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). In the present case, the Commonwealth of Pennsylvania is not just the real party in interest, but the **defendant itself**. Compl., ¶ 3. This only buttresses the above grounds for immunity. *See Scheib v. Pa.*, 612 Fed. Appx. 56, 58 (3d Cir. 2015) (affirming dismissal of plaintiff's claims against state due to Eleventh Amendment immunity). Plaintiff appears to treat the Commonwealth "and/or" the Board of Pardons and the Department of

5

Corrections synonymously (*see* Compl., ¶ 3), but there is no basis for doing so – and, *even if* they could be synonymous, this would have no bearing on Eleventh Amendment immunity because the state is the real party in interest. *See Hafer*, 502 U.S. at 25; 71 P.S. § 732-102 (defining "Executive agency" as "The Governor and the departments, boards, commissions, authorities and other officers and agencies of the Commonwealth government . . ."); *Lavia v. Pa. Dep't of Corr.*, 224 F. 3d 190, 195 (3d Cir. 2000) ("Because . . . Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, *see* [71 P.S.] § 61, it shares in the Commonwealth's Eleventh Amendment immunity.").

None of the exceptions to Eleventh Amendment immunity apply to this case. Section 1983 does not abrogate immunity and the Commonwealth has not waived immunity or consented to this action. Therefore, defendant Commonwealth of PA is entitled to Eleventh Amendment immunity. Further, Plaintiff's claims against defendants Wolf, Fetterman, and Flood in their official capacities (*see* Compl., ¶¶ 4-6) also are barred by Eleventh Amendment immunity. *Coeur d'Alene Tribe*, 521 U.S. at 267-70; *Seminole Tribe*, 517 U.S. at 54, 58; *see also Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) ("Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because 'official-capacity suits generally represent only another way of pleading an action' against the state") (quoting *Hafer*, 502 U.S. at 25).

Because this Court lacks subject matter jurisdiction over Plaintiff's claims against the state and its (former) executive officials in their official capacities, Plaintiff's claims against them in their official capacities, as well all her claims against the Commonwealth itself (with the exception of the ADA claim in Count IX[3]), must be dismissed with prejudice.

---

[3] Unlike with Section 1983, Congress has validly enacted an "unambiguous waiver" of states' sovereign immunity in Title II of the ADA. *See Lane v. Pena*, 518 U.S. 187, 200 (1996).

**B.** **Defendants, in their individual capacities, are entitled to Qualified Immunity because the Complaint fails to plausibly allege a violation of a federal right.**

The defense of qualified immunity shields government officials, in their individual capacities, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity requires the Court to consider two issues: (1) whether the plaintiff has shown a violation of a federal right, and (2) whether that right was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court may consider these issues in any order, and the plaintiff's failure to establish either issue entitles a defendant to immunity. *Pearson v. Callahan*, 555 U.S. 223, 232 & 236 (2009). The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The following subparts apply to plaintiff's claims against defendants Wolf, Fetterman, and Flood only, as Defendants will address the claims against the Commonwealth separately in § III.D-E, *infra*:

1. Count I fails to allege a Fourth Amendment claim.

In unspecified fashion, Plaintiff alleges that "All Defendants" violated Norris' rights under the Fourth Amendment "to be secure in his person against unreasonable seizure." Compl., ¶ 41. The Fourth Amendment provides, *inter alia*, that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. CONST. amend. IV. A person is "seized" for purposes of the Fourth Amendment only when, by means of physical force or a show of authority, his freedom of movement is restrained and he was not free to leave. *United States v. Mendenhall*, 446 U.S. 544,

553-54 (1980).

Crucially, at no point in Count I does the Complaint specify when the alleged "seizure" occurred. *See* Compl., ¶¶ 41-44. Instead, to the extent Plaintiff is alleging something along the lines of false imprisonment, the seizure – regardless of whether it was reasonable or unreasonable – seems to have occurred more than 45 years ago. *See* Compl., ¶ 10.

"While prisoners do not lose all of their constitutional rights as a consequence of their incarceration, it cannot be doubted that 'imprisonment carries with it the circumscription or loss of many significant rights.'" *Goldhaber v. Higgins*, 576 F.Supp.2d 694, 716 (W.D. Pa. 2007) (quoting *Hudson v. Palmer*, 468 U.S. 517, 524 (1984)). As such, "[s]ince *Hudson*, there has been considerable uncertainty as to whether prison inmates are *ever* entitled to Fourth Amendment protection." *Goldhaber*, 576 F.Supp.2d at 716 (emphasis in original) (citing cases). Consequently, "even if it is assumed that it is somehow possible for an incarcerated prisoner to be seized," Count I must fail due to any allegation as to when such a seizure of Norris occurred. *See id.* at 718 (granting motion to dismiss). Thus, Count I fails to allege that any individual defendant violated Norris' Fourth Amendment rights.

2.     Count III fails to allege a Fifth Amendment claim.

In conclusory fashion, Plaintiff alleges in Count III that the defendants violated two of Norris' Fifth Amendment rights: freedom from double jeopardy and the Fifth's due process clause. *See* Compl., ¶¶ 58-61. These claims may be easily disposed of.

First, it is well-settled that the Fifth Amendment's due process clause – unlike the Fourteenth's, which is the subject of Count VII – applies only to the federal government. *E.g.*, *McField ex rel. Ray v. Philadelphia Hous. Auth.*, 992 F. Supp. 2d 481, 492 (E.D. Pa. 2014) (quoting *Citizens for Health v. Leavitt*, 428 F.3d 167, 178 n.11 (3d Cir. 2005) ("In a due process

8

claim brought under the Fifth Amendment, the 'State' in the state action analysis is the federal government"); *Malloy v. Hogan*, 378 U.S. 1, 26 (1964).

Second, the double jeopardy clause of the Fifth Amendment, by definition, requires <u>two</u> separate prosecutions or sets of charges for the same offense (among other requirements). The Complaint makes no such allegation. Indeed, it is unclear what was intended by Plaintiff's reference to "double jeopardy." To the extent Plaintiff is seeking to challenge Norris' conviction, she is barred from bringing a constitutional claim pursuant to § 1983 if a judgment in plaintiff's favor would demonstrate or imply the invalidity of Norris' criminal conviction. *See Heck v. Humphrey*, 512 U.S. 477 (1994). To the extent Plaintiff is alleging something other than a claim barred by *Heck*, her threadbare references to the Fifth Amendment do not satisfy pleading standards under Rule 8. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

For the above reasons, Plaintiff fails to allege that any individual defendant violated Norris' Fifth Amendment rights.

       3.     <u>Count V fails to allege an Eighth Amendment claim.</u>

In Count V, Plaintiff asserts a hybrid Eighth Amendment claim, alleging "excessive bail and/or cruel and unusual punishment" through deliberate indifference. Compl., ¶¶ 77-78. There is no *possibility* of liability against the individual defendants for excessive bail, given that none of them could have had any involvement in Norris' bail determination more than 45 years ago. Plaintiff's deliberate indifference claim is more colorable, but still fails.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life – i.e., food, clothing, shelter, sanitation, medical care, and personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Helling v. McKinney*, 509 U.S. 25, 31 (1993). An alleged deprivation of this right must be focused on a particular basic necessity. *Wilson v. Seiter,* 501 U.S. 294, 304-305 (1991). After

making a showing that the conditions pose a risk of serious harm, the inmate must establish that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Id.* at 298. Prison officials violate the Eighth Amendment when they act with deliberate indifference to a known, objectively serious, risk to a prisoner's health or safety. *See Farmer,* 511 U.S. at 837; *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

The basic necessity at issue in the present case is Norris' medical care. *See* Compl., ¶¶ 13-16, 31. Plaintiff alleges that Defendants Wolf, Fetterman, and Flood "knew or had reason to know that Bruce Norris was at risk of being infected with the Covid-19 virus and/or dying from the same[.]" *Id.*, ¶ 13. Plaintiff does not allege that the defendants personally knew of any heightened risk affecting Norris in particular, when compared to any other inmate during the pandemic. Instead, Plaintiff asserts in generalized (statewide) fashion that Pennsylvania inmates "were catching the virus at a rate . . . three (3) times that of the Defendants' free constituents[.]" *Id.* With respect to the objective element of the *Farmer* standard, it is unclear how, in and of itself, providing a single cell for Norris, *see* Compl., ¶ 16, would have prevented his contraction of a highly contagious airborne virus. To the extent this could have been considered a medical decision rather than a housing/security decision – which would seem quite a stretch – federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Williams v. Fedarko*, 807 Fed. Appx. 177, 180 (3d Cir. 2020).[4] Moreover, *even if* transfer to a single cell could be considered "medical care," neither Pennsylvania's Governor nor Lieutenant Governor nor Secretary of the Board of Pardons could have had *any* role in the cell management at SCI Phoenix or any other prison. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("defendant[s] in a civil rights action must

---

[4] Plaintiff has filed a related civil lawsuit in state court, captioned *Stewart v. Wolf, et al.*, Pa. Com. Pls. Phila. Cnty., No. 22-11-02308, which includes medical defendants.

have personal involvement" to be liable under § 1983).

With respect to the second element, "a sufficiently culpable state of mind," the Complaint itself undermines if not defeats any such allegation of mal-intent. Instead, the Complaint quotes the former Governor's Office as stating, "without additional resources and staff there is no ability to process the recommendations [of the Board of Pardons] any faster." Compl., ¶ 18. This means that Commonwealth officials were seeking to process Norris' commutation even faster – the opposite of deliberate indifference. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("Absent a reason to believe . . . that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.").

For the above reasons, Plaintiff fails to allege that any individual defendant violated Norris' Eighth Amendment rights.

4.      Count VII fails to allege a Fourteenth Amendment claim.

Plaintiff claims that the defendants "violated Bruce Norris' Fourteenth Amendment right to bodily integrity and freedom from physical restraint." Compl., ¶ 90. In smorgasbord fashion, Count VII invokes the (1) Privileges and Immunities; (2) Due Process; and (3) Equal Protection clauses of the Fourteenth Amendment. Compl., ¶¶ 91-93. There are no facts supporting any such claim, which will be analyzed in turn.

First, invoking the Privileges and Immunities clause of the Fourteenth Amendment is a non-starter, in that the clause "has remained essentially moribund since the Supreme Court's decision in *The Slaughter-House Cases* . . . (1872), and the Supreme Court has subsequently relied almost exclusively on the Due Process Clause as the source of unenumerated rights." *In re Sacred Heart Hosp. of Norristown*, 133 F.3d 237, 244 (3d Cir. 1998) (cleaned up).

Second, with respect to the Due Process clause, it is unclear whether Plaintiff is asserting procedural or substantive due process rights. Defendants will assume Plaintiff has invoked substantive due process because of Count VII's reference to the "shocks the conscience" standard. *See* Compl., ¶ 97; *see also Miller v. City of Phila.*, 174 F.3d 368, 375-76 (3d Cir. 1999) ("[T]he standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'"). But under the "more specific provision" rule, the Supreme Court has held that where a particular "Amendment provides an explicit textual source of constitutional protection against [a particular sort of government behavior], that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The "more specific provision" at issue here is the Eighth Amendment.

Alternatively, to the extent Plaintiff attempts to allege a violation of Norris' procedural due process rights, such claim also fails. In *Daniels v. Williams*, 474 U.S. 327 (1986), the Supreme Court explained that the guarantee of procedural due process applies only to "deliberate decisions of government officials to deprive a person of life, liberty, or property." *Id.* at 331. The Clause simply does not apply to acts of negligence, whether in or out of the prison setting, and even if there is a "lack of due care by prison officials." *Id.* at 332-33. Further, Plaintiff has not identified any protected liberty interest. By analogy, it "is well-settled that under Pennsylvania law a grant of parole by itself does not vest a prisoner with any protected liberty interest in that parole." *Johnson v. Com., Pa. Bd. of Prob. & Parole*, 532 A.2d 50, 52 (Pa. Commw. Ct. 1987) (citing cases). For all these reasons, there can be no liability under either Due Process theory.

Finally, Count VII fails to state a plausible equal protection claim. The Equal Protection clause directs that all persons similarly situated should be treated similarly. *City of Cleburne v.*

12

*Cleburne Living Center*, 473 U.S. 432, 439 (1985). Plaintiff, who does not allege that Norris was

a member of a protected class, attempts to bring an Equal Protection "Class of One" claim, as

recognized in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). "According to that theory, a

plaintiff states a claim for violation of the Equal Protection clause when he 'alleges that he has

been intentionally treated differently from others similarly situated and that there is no rational

basis for the difference in treatment.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir.

2006) (quoting *Willowbrook*, 528 U.S. at 564). The Complaint including Plaintiff's exhibits,

which are deemed a part of the Complaint, does not allege that Norris was intentionally treated

differently from other similarly situated. Instead, the Philadelphia *Inquirer* article appended to

the Complaint as Exhibit A (*see* ¶ 18) expressly states that Norris "joined 13 other lifers who

were all waiting for Gov. Tom Wolf to act on the recommendation" – thus, quite far from a

"Class of One."

In sum, Plaintiff fails to allege that any individual defendant violated Norris' Fourteenth

Amendment rights.

     5.    <u>Count IX fails to allege an ADA claim.</u>

Plaintiff sues the individual defendants under Title II of the Americans with Disabilities

Act, 42 U.S.C. §§ 12131-12134. Title II of the ADA prohibits discrimination "by reason of" a

qualified individual's disability in the "services, programs, or activities of a public entity." 42

U.S.C. § 12132.

None of the individual defendants is plausibly alleged to be "public entities" within the

meaning of ADA Title II. Nor could they be. *See Kokinda v. Pa. Dep't of Corr.*, 779 Fed. Appx.

938, 942 (3d Cir. 2019) (per curiam) ("claims for individual damages liability under Title II of

the ADA fail for the simple reason that there is no such liability"); *Emerson v. Thiel Coll.*, 296

F.3d 184, 189 (3d Cir. 2002) (stating, in dicta, "that individuals are not liable under Titles I and

II of the ADA" for discrimination); *Williams v. Hayman*, 657 F. Supp. 2d 488, 502 (D.N.J. 2008) ("Nearly every court that has addressed the question appears to have held that Title II does not authorize suits against government officers in their individual capacities.") (citing case law); *see also Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) ("there is no personal liability under Title II" for money damages). *See also Frederick L. v. Dep't of Pub. Welfare*, 157 F. Supp. 2d 509, 531 (E.D. Pa. 2001) ("as a general matter, suits brought against individuals in their individual capacities are not properly brought under the ADA . . .") (citing numerous cases). In the light of the foregoing authority, Plaintiff cannot state an ADA claim against the individual defendants.

In sum, Plaintiff has failed to allege that Defendants Wolf, Fetterman and Flood violated any of Norris' federal rights. For this reason alone, the individual defendants are entitled to qualified immunity. *See Pearson*, 555 U.S. at 236-37.

### C.   Defendants, in their individual capacities, are entitled to Qualified Immunity because there is no clearly established right to speedy clemency/commutation

Satisfying the second element of qualified immunity – that the right at issue was clearly established – is a two-step process. First, a court must "define the right allegedly violated at the appropriate level of specificity," meaning that it must be defined "in light of the case's specific context, not as a broad general proposition." *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 172 (3d Cir. 2017) (internal citation and quotation marks omitted). Second, once the right is defined, a court must "identify a case where an officer acting under similar circumstances" was held to violate the constitution. *White v. Pauly*, 137 S.Ct. 548, 552 (2017). The law does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

For each theory of liability, the plaintiff must articulate the particular right at issue and cite controlling authority clearly establishing that right, in this factual context, prior to January 30, 2021. It is not the defendant's burden to prove the absence of controlling authority. That said, Defendant are unaware of any authority holding that a state official could be liable under Section 1983 for a 41-day "delay" – *if* the time period between Dec. 19, 2020 and Jan. 30, 2021 constitutes a delay – in effectuating the clemency or commutation of a prison sentence. To the extent there is relevant clearly established law, it would seem to support qualified immunity. *See Montanez v. Thompson*, 603 F.3d 243, 253-54 (3d Cir. 2010) (reversing district court's denial of qualified immunity for PA-DOC officials' calculation error which led to plaintiff being incarcerated beyond his maximum incarceration date). Therefore, the constitutional question here is not "beyond debate." *See al-Kidd*, 563 U.S. at 741.

Consequently, the individual defendants are entitled to qualified immunity, which is immunity from suit. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)

**D.      Plaintiff's *Monell* claims against the state (Counts II, IV, VI, VIII) must fail.**

For each of her claims under the Fourth, Fifth, Eighth and Fourteenth Amendments, Plaintiff also sues the defendant Commonwealth for "policies, procedures, customs and practices" which allegedly resulted in Norris' death. *See* Compl., ¶¶ 50, 67, 88, 105. Preliminarily, any consideration of these claims would first require the Court to ignore or reject Eleventh Amendment immunity for the state. *See* § III.A, *supra*.

In *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978) the Supreme Court held that a municipality (and municipal officials) may be held liable where its "policy" or "custom" is the moving force behind a constitutional violation. It is self-evident that the Commonwealth of Pennsylvania, which is the sole defendant in Counts II, IV, VI and VIII, is not a municipality. More substantively, states are not considered 'persons' amenable to suit for purposes of a

15

damages claim under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 69-71, & n.10 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

Further, "simply paraphras[ing]" the elements of a *Monell* claim "fails to satisfy the 'rigorous standards of culpability and causation' required to state a claim[.]" *Wood v. Williams*, 568 Fed. Appx. 100, 104 (3d Cir. 2014) (quoting *McTernan v. City of York*, 564 F.3d 636, 658-59 (3d Cir. 2009)). On the contrary, the Complaint attributes Norris' tragic death, at least in part, to a lack of resources (*see, e.g.*, ¶ 18) – arguably a budgetary question for the legislature, not the federal courts.

In sum, the Commonwealth cannot be subject to liability under any *Monell*-like theory. Therefore, Counts II, IV, VI and VIII should be dismissed with prejudice.

**E.**     **Plaintiff's ADA claim (Count IX) fails to state a claim against any defendant.**

As already explained in Section IV.B.5, the individual defendants are not proper parties to the ADA Title II claim. In the event the Court disagrees, the following argument concerning the Commonwealth's potential liability under Count IX also would apply to the individuals:

Title II of the ADA states, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Although state prisons can be a public entity within the meaning of the statute, Plaintiff does not plausibly allege that the "clemency/parole/commutation process" is a "program or service" covered under the ADA; such assertion is made only in conclusory fashion. *See* Compl., ¶ 110. Further, Plaintiff has not explained how Mr. Norris was a qualified individual with a disability, as defined and understood under the ADA. For example, although "long Covid" has been recognized as a disability under the ADA, Plaintiff fails to allege how Norris' Covid-19

alone substantially limited one or more of his major life activities. *See* 42 U.S.C. § 12102(1), (2) (definitions of "Disability" and "Major life activities"). Consequently, Plaintiff has failed to state a plausible ADA claim.

## IV.    CONCLUSION

For all the foregoing reasons, Defendants Commonwealth of Pennsylvania, Tom Wolf, John Fetterman, and Brandon Flood respectfully request this Court grant their Motion to Dismiss Plaintiff's Complaint, in the form of Order appended hereto.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

Date: June 13, 2023                    By:    */s/ Matthew Skolnik*
_____

Office of Attorney General              Matthew Skolnik
1600 Arch Street, Suite 300             Senior Deputy Attorney General
Philadelphia, PA 19103                  Attorney I.D. No. 89423
Phone: (215) 560-2136
Fax:    (717) 772-4526                   Karen M. Romano
mskolnik@attorneygeneral.gov            Chief Deputy Attorney General
                                        Civil Litigation Section

                                        *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew Skolnik, hereby certify that the foregoing Defendants' Motion to Dismiss, with supporting papers, has been filed electronically on June 13, 2023 and is available for viewing and downloading from the Court's Electronic Case Filing system by all counsel of record.

Date: June 13, 2023              By:   */s/ Matthew Skolnik*
                                       _____
                                       Matthew Skolnik
                                       Senior Deputy Attorney General