**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANICE STEWART, *et al.*, | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-0295 |
| | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, *et al.*, | : | |
| Defendants. | : | |

## <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2023, upon consideration of Defendants' Motion to Dismiss Amended Complaint and Plaintiff's response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**.

It is FURTHER **ORDERED** as follows:

1.      Counts I through V of the Amended Complaint are **DISMISSED with prejudice**.

2.      Defendants Wolf, Fetterman and Flood are not proper parties to Plaintiff's ADA claim (Count VI), which is **DISMISSED with prejudice** as to the Individual Defendants.

3.      Defendant Commonwealth of Pennsylvania must answer the remaining portion of Count VI of the Amended Complaint within __ days of the date of this Order.

**BY THE COURT:**

_____
**MICHAEL M. BAYLSON, U.S.D.J.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANICE STEWART, *et al.*, | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-0295 |
| | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, *et al.*, | : | |
| Defendants. | : | |

## **DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Defendants Tom Wolf, John Fetterman, and Brandon Flood (the "Individual Defendants"), by their undersigned counsel, hereby move this Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff Janice Stewart's Amended Complaint in its entirety as against them. In addition, Defendant Commonwealth of Pennsylvania hereby moves this Court, per Rule 12(b)(6), to dismiss Count V of the Amended Complaint. The reasons for this combined Motion are explained in the accompanying memorandum of law.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

Date: September 28, 2023    By:    */s/ Matthew Skolnik*
_____

Matthew Skolnik
Senior Deputy Attorney General
Attorney I.D. No. 89423

OFFICE OF ATTORNEY GENERAL
1600 Arch Street, Suite 300
Philadelphia, PA 19103
Phone: (215) 560-2136        Karen M. Romano
Fax:    (717) 772-4526       Chief Deputy Attorney General
mskolnik@attorneygeneral.gov   Civil Litigation Section

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANICE STEWART, *et al.*, | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-0295 |
| | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Defendants Commonwealth of Pennsylvania, Tom Wolf, John Fetterman, and Brandon Flood, by and through their undersigned counsel, respectfully submit this memorandum of law in support of their Motion to Dismiss Plaintiff Janice Stewart's Amended Complaint.

**I.      INTRODUCTION AND PROCEDURAL BACKGROUND**

Plaintiff has brought this lawsuit seeking money damages against the state itself, former Governor Tom Wolf, former Lieutenant Governor and former Chair of the Board of Pardons John Fetterman, and former Secretary of the Board of Pardons Brandon Flood, as a result of the death of her father, Bruce Norris.

On June 13, 2023, Defendants moved to dismiss the original complaint, which motion (Doc. 10) was mooted with Plaintiff's filing of the Amended Complaint (Doc. 13). In an apparent effort to remedy one of the defects noted in Defendants' motion to dismiss, Plaintiff is now pursuing Defendants Wolf, Fetterman, and Flood in their individual capacities only. Am. Compl., ¶¶ 4-6. Plaintiff also has rightfully withdrawn her *Monell*-like claims against the Commonwealth. With respect to Plaintiff's other causes of action, for the most part they appear substantively unchanged from the original pleading.

1

## II.    FACTS ALLEGED

Plaintiff's father, Mr. Norris, had been incarcerated for approximately 45 years as of December 19, 2020. Am. Compl., ¶ 10. On that date, Pennsylvania's Board of Pardons, defendant Fetterman, and defendant Flood approved Norris' application for pardon or clemency or commutation of his life sentence. Am. Compl., ¶ 11.[1]

During most of his 45 years in Pennsylvania state prisons, especially at SCI Graterford, Norris was housed in a single cell. *Id.*, ¶ 10. At some unspecified point between December 19, 2020 and January 30, 2021, Norris became infected with Covid-19 while sharing a two-person cell at SCI Phoenix; during this time, he also was awaiting the defendant former Governor's signature on the Board of Pardons' recommendation. *Id.*, ¶ 15; *see also* Ex. A thereto ("Norris finally got the board's approval on Dec. 19, 2020 – but joined 13 other lifers who were all waiting for Gov. Tom Wolf to act on the recommendation."). Norris was "at risk of being infected with the Covid-19 virus and/or dying from the same, given [his] . . . record of comorbidities." Am. Compl., ¶ 14. Norris died on January 30, 2021. *Id.*, ¶ 15. Defendants had "preexisting knowledge of his comorbidities" and the risks of Covid-19 in the prison setting. *Id.*, ¶ 16.

According to the plaintiff, each of the individual defendants was "responsible for timely effectuating Bruce Norris' release from SCI Phoenix[.]" *Id.*, ¶ 17. Defendants' policies for processing orders for release of state prisoners "were woefully and knowingly inadequate." *Id.*, ¶¶ 24-26.

---

[1] It is unclear from Plaintiff's pleading whether the Board recommended a pardon or clemency or commutation of Norris' sentence, or some combination of the three. It is worth noting that this ambiguity was discussed in Defendants' first Motion to Dismiss, at footnote 1, because it may very well be that a final decision as to pardon/clemency/commutation had not yet been made – which, if so, would greatly undermine (if not extinguish) Plaintiff's claims of a then-imminent release.

## III.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 8, following the Supreme Court decisions in *Bell Atlantic Corp. v.*
*Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009),
pleadings standards in federal court have shifted from simple notice pleading to a more
heightened form of pleading that requires a plaintiff to plead more than the possibility of relief to
survive a motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009);
*Phillips v. County of Allegheny*, 515 F. 3d 224, 230 (3d Cir. 2008).

It is "no longer sufficient to allege mere elements of a cause of action; instead a
complaint must allege facts suggestive of the proscribed conduct." *Id.* at 233 (citing *Twombly*)
(cleaned up). Thus, when presented with a motion to dismiss for failure to state a claim, the
district court should conduct a two-part analysis.  First, the factual and legal elements of a claim
should be separated.  The court accepts the complaint's well-pleaded facts as true but should
disregard legal conclusions. *Iqbal*, 556 U.S. at 678-79.  Second, the court determines whether the
facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for
relief." *Id.*  A complaint must do more than allege the plaintiff's entitlement to relief; it must
"show" such an entitlement with its facts. *Id.*; *see Phillips*, 515 F.3d at 234-35; *Santiago v.*
*Warminster Twp.*, 629 F. 3d 121, 130 (3d Cir. 2010). In ruling on a motion to dismiss under Rule
12(b)(6), a court should "draw on its judicial experience and common sense" and dismiss claims
where the facts merely suggest a possibility of liability, rather than "plausibly establish" it. *Iqbal*,
129 S.Ct. at 1950-51.

The defense of qualified immunity is not merely a defense to liability, but immunity from
suit. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Because qualified immunity is 'an
immunity from suit rather than a mere defense to liability[,] it is effectively lost if a case is
erroneously permitted to go to trial." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting

*Mitchell*, 472 U.S. at 526). Due to the foregoing, "determining whether officials are entitled to qualified immunity should be determined as early as possible." *Martin-McFarlane v. City of Philadelphia*, 299 F.Supp.3d 658, 668 (E.D. Pa. 2017). On a Rule 12(b)(6) motion, the defendant must show an entitlement to qualified immunity based "on the face of the complaint." *See id.*

## IV.   ARGUMENT

Section 1983 provides a cause of action against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The statute "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a § 1983 claim, a plaintiff must allege facts showing that a person acted under color of state law to deprive the plaintiff of a right secured by the Constitution or federal law. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

### A.   Defendants Wolf, Fetterman and Flood are entitled to Qualified Immunity because Plaintiff fails to plausibly allege that they violated any federal right.

The defense of qualified immunity shields government officials, in their individual capacities, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity requires the Court to consider two issues: (1) whether the plaintiff has shown a violation of a federal right, and (2) whether that right was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court may consider these issues in any order, and the plaintiff's failure to establish either issue entitles a defendant to immunity. *Pearson v. Callahan*, 555 U.S. 223, 232 & 236 (2009). The Supreme Court "repeatedly ha[s] stressed the importance

of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

**With the exception of Count V**, which is directed against all Defendants, the following subparts apply only to Plaintiff's claims against defendants Wolf, Fetterman, and Flood (the "Individual Defendants"):

    1. <u>Count I fails to allege a Fourth Amendment claim.</u>

The Fourth Amendment provides, *inter alia*, that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. CONST. amend. IV.  A person is "seized" for purposes of the Fourth Amendment only when, by means of physical force or a show of authority, his freedom of movement is restrained and he was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980).

Crucially, although Plaintiff alleges that the Individual Defendants violated Norris' rights under the Fourth Amendment "to be secure in his person against unreasonable seizure," at no point in Count I does she specify when the alleged "seizure" occurred. *See* Am. Compl., ¶¶ 39-40. Instead, Plaintiff now avers that Norris' Fourth Amendment rights were "vested as of December 19, 2020." Am. Compl., ¶ 41.  "Vesting" is not the issue or the relevant inquiry. *See Wallace v. Kato*, 549 U.S. 384, 388-89 (2007) (holding that the statute of limitations for a false arrest/imprisonment claim begins to run at the time the claimant becomes detained pursuant to legal process). For section 1983 actions based on conduct in Pennsylvania, the statute of limitations is two years from the date the claim accrued. *See* 42 Pa. C.S. § 5524(2); *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). To the extent Plaintiff is alleging something along the lines of false imprisonment, the seizure – regardless of whether it was reasonable or unreasonable – seems to have occurred 48 years ago. *See* Am. Compl., ¶ 10. This timeframe

alone would defeat Plaintiff's Fourth Amendment claim. Further, the lawsuit was filed January 24, 2023, which is more than two years after even Plaintiff's later "vested" date of December 19, 2020.

Moreover, even a timely 'unreasonable seizure' claim is not plausible as against the Individual Defendants. "While prisoners do not lose all of their constitutional rights as a consequence of their incarceration, it cannot be doubted that 'imprisonment carries with it the circumscription or loss of many significant rights.'" *Goldhaber v. Higgins*, 576 F.Supp.2d 694, 716 (W.D. Pa. 2007) (quoting *Hudson v. Palmer*, 468 U.S. 517, 524 (1984)). As such, "[s]ince *Hudson*, there has been considerable uncertainty as to whether prison inmates are *ever* entitled to Fourth Amendment protection." *Goldhaber*, 576 F.Supp.2d at 716 (emphasis in original) (citing cases). Consequently, "even if it is assumed that it is somehow possible for an incarcerated prisoner to be seized," Count I must fail due to any allegation as to when such a seizure of Norris occurred. *See id.* at 718 (granting motion to dismiss). Therefore, Count I fails to allege that the Individual Defendants violated Norris' Fourth Amendment rights.

>    2.    Count II fails to allege a Fifth Amendment claim.

In conclusory fashion, Plaintiff alleges in Count III that the Individual Defendants violated two of Norris' Fifth Amendment rights: freedom from double jeopardy and the Fifth's due process clause. *See* Am. Compl., ¶¶ 49-52. These claims may be easily disposed of.

First, it is well-settled that the Fifth Amendment's due process clause – unlike the Fourteenth's, which is but one subject of Count IV – applies only to the federal government. *E.g.*, *McField ex rel. Ray v. Philadelphia Hous. Auth.*, 992 F. Supp. 2d 481, 492 (E.D. Pa. 2014) (quoting *Citizens for Health v. Leavitt*, 428 F.3d 167, 178 n.11 (3d Cir. 2005) ("In a due process

claim brought under the Fifth Amendment, the 'State' in the state action analysis is the federal government"); *Malloy v. Hogan*, 378 U.S. 1, 26 (1964).

Second, the double jeopardy clause of the Fifth Amendment, by definition, requires <u>two</u> separate prosecutions or sets of charges for the same offense (among other requirements). The Amended Complaint makes no such allegation. Indeed, it is unclear what was intended by Plaintiff's reference to "double jeopardy." To the extent Plaintiff is seeking to challenge Norris' conviction, she is barred from bringing a constitutional claim pursuant to § 1983 if a judgment in plaintiff's favor would demonstrate or imply the invalidity of Norris' criminal conviction. *See Heck v. Humphrey*, 512 U.S. 477 (1994). To the extent Plaintiff is alleging something other than a claim barred by *Heck*, her threadbare references to the Fifth Amendment do not satisfy pleading standards under Rule 8. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

For the above reasons, Plaintiff fails to allege that any individual defendant violated Norris' Fifth Amendment rights.

>  3.  <u>Count III fails to allege an Eighth Amendment claim.</u>

In Count III, Plaintiff asserts a hybrid Eighth Amendment claim, alleging "excessive bail and/or cruel and unusual punishment" through deliberate indifference. Am. Compl., ¶¶ 61-62. There is no *possibility* of liability against the Individual Defendants for excessive bail, given that none of them could have had any involvement in Norris' bail determination more than 45 years ago. Plaintiff's deliberate indifference claim is more colorable, but still fails.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life – i.e., food, clothing, shelter, sanitation, medical care, and personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 832

(1994); *Helling v. McKinney*, 509 U.S. 25, 31 (1993). An alleged deprivation of this right must be focused on a particular basic necessity. *Wilson v. Seiter,* 501 U.S. 294, 304-305 (1991). After making a showing that the conditions pose a risk of serious harm, the inmate must establish that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Id.* at 298. Prison officials violate the Eighth Amendment when they act with deliberate indifference to a known, objectively serious, risk to a prisoner's health or safety. *See Farmer,* 511 U.S. at 837; *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

The basic necessity at issue in the present case is Norris' medical care. *See* Am. Compl., ¶¶ 13-16, 21. Plaintiff alleges that Defendants Wolf, Fetterman, and Flood "knew or had reason to know that Bruce Norris was at risk of being infected with the Covid-19 virus and/or dying from the same[.]" *Id.*, ¶¶ 13, 14. Plaintiff does not allege that the defendants personally knew of any heightened risk affecting Norris in particular, when compared to any other inmate during the pandemic. Instead, Plaintiff asserts in generalized (i.e., statewide) fashion that Pennsylvania inmates "were catching the virus at a rate . . . three (3) times that of the Defendants' free constituents[.]" *Id.*, ¶ 13.  With respect to the objective element of the *Farmer* standard, it is unclear how, in and of itself, providing a single cell for Norris, *see* Am. Compl., ¶ 16, would have prevented his contraction of a highly contagious airborne virus.

To the extent moving Norris to a single cell could be considered a medical decision rather than a housing/security decision, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Williams v. Fedarko*, 807 Fed. Appx. 177, 180 (3d Cir. 2020).[2]  The Third Circuit has consistently held that prison officials who are not medical professionals cannot be considered deliberately indifferent simply

---

[2] Plaintiff has filed a related civil lawsuit in state court, captioned *Stewart v. Wolf, et al.*, Pa. Com. Pls. Phila. Cnty., No. 22-11-02308, which includes medical defendants.

because they failed to respond directly to the medical complaints of a prisoner who was already

being treated by a prison doctor. *See Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993).

Moreover, even if, *arguendo*, an inmate's desired transfer to a single cell could be considered

"medical care," neither Pennsylvania's Governor nor Lieutenant Governor nor Secretary of the

Board of Pardons could have had *any* role in the cell management at SCI Phoenix or any other

prison. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("defendant[s] in a civil rights

action must have personal involvement" to be liable under § 1983).

With respect to the subjective element, "a sufficiently culpable state of mind," the

Amended Complaint itself undermines if not defeats any such allegation of mal-intent. Instead,

Plaintiff quotes the former Governor's Office as stating, "without additional resources and staff

there is no ability to process the recommendations [of the Board of Pardons] any faster." Am.

Compl., ¶ 18. This means that Commonwealth officials were seeking to process Norris'

commutation even faster – the opposite of deliberate indifference. *See Spruill v. Gillis*, 372 F.3d

218, 236 (3d Cir. 2004) ("Absent a reason to believe . . . that prison doctors or their assistants are

mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with

the Eighth Amendment scienter requirement of deliberate indifference.").

For the above reasons, Plaintiff fails to allege that any individual defendant violated

Norris' Eighth Amendment rights.

4.      Count IV fails to allege a Fourteenth Amendment claim.

Plaintiff claims that, as of December 19, 2020, the Individual Defendants "violated Bruce

Norris' Fourteenth Amendment right to bodily integrity and freedom from physical restraint."

Am. Compl., ¶ 68. In smorgasbord fashion, Count IV invokes the (1) Privileges and Immunities;

9

(2) Due Process; and (3) Equal Protection clauses of the Fourteenth Amendment. Compl., ¶¶ 69-71. There are no facts supporting any such claim, each of which will be analyzed in turn.

First, invoking the Privileges and Immunities clause of the Fourteenth Amendment is a non-starter, in that the clause "has remained essentially moribund since the Supreme Court's decision in *The Slaughter-House Cases* . . . (1872), and the Supreme Court has subsequently relied almost exclusively on the Due Process Clause as the source of unenumerated rights." *In re Sacred Heart Hosp. of Norristown*, 133 F.3d 237, 244 (3d Cir. 1998) (cleaned up). The long-acknowledged absence of authority, in and of itself, entitles the Individual Defendants to qualified immunity on (at an absolute minimum) this portion of Count IV.

Second, with respect to the Due Process clause, it remains unclear whether Plaintiff is asserting procedural or substantive due process rights. Thus, despite identifying this ambiguity in their first motion to dismiss, the Individual Defendants again will examine both potential theories. It appears that Plaintiff has invoked substantive due process because of Count IV's reference to the "shocks the conscience" standard. *See* Compl., ¶ 75; *see also Miller v. City of Phila.*, 174 F.3d 368, 375-76 (3d Cir. 1999) ("[T]he standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'"). But under the "more specific provision" rule, the Supreme Court has held that where a particular "Amendment provides an explicit textual source of constitutional protection against [a particular sort of government behavior], that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The "more specific provision" at issue here is the Eighth Amendment.

Alternatively, to the extent Plaintiff attempts to allege a violation of Norris' procedural due process rights, such claim also fails. In *Daniels v. Williams*, 474 U.S. 327 (1986), the Supreme Court explained that the guarantee of procedural due process applies only to "deliberate decisions of government officials to deprive a person of life, liberty, or property." *Id.* at 331. The Clause simply does not apply to acts of negligence, whether in or out of the prison setting, and even if there is a "lack of due care by prison officials." *Id.* at 332-33. Further, Plaintiff has not identified any protected liberty interest. By analogy, it "is well-settled that under Pennsylvania law a grant of parole by itself does not vest a prisoner with any protected liberty interest in that parole." *Johnson v. Com., Pa. Bd. of Prob. & Parole*, 532 A.2d 50, 52 (Pa. Commw. Ct. 1987) (citing cases). For unknown reasons, Plaintiff has added a citation to what she claims is un-published authority in this District that "an overdetention of sixteen (16) days may constitute a violation of due process." Am. Compl. at 11, n.2. Yet, a cursory look at the case cited by Plaintiff reveals that the 16-day "overdetention" was merely an *allegation* in a complaint *which was dismissed* by that court. *See Willis v. Fed. Bureau of Prisons*, C.A. No. 22-2682, 2022 WL 15525751 (E.D. Pa. Oct. 27, 2022). There is no persuasive, let alone binding, authority in this Circuit which would render Plaintiff's Due Process claim plausible. Therefore, the Individual Defendants cannot be liable under either Due Process theory.

Finally, Count IV fails to state a plausible equal protection claim. The Equal Protection clause directs that all persons similarly situated should be treated similarly. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Plaintiff, who does not allege that Norris was a member of a protected class, attempts to bring an Equal Protection "Class of One" claim, as recognized in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). "According to that theory, a plaintiff states a claim for violation of the Equal Protection clause when he 'alleges that he has

11

been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (quoting *Willowbrook*, 528 U.S. at 564). The Amended Complaint including Plaintiff's exhibits, which are deemed a part of the pleading, does not allege that Norris was intentionally treated differently from other similarly situated. Instead, the Philadelphia *Inquirer* article appended to the Complaint as Exhibit A (Doc. 13-1, at 3) expressly states that Norris "joined 13 other lifers who were all waiting for Gov. Tom Wolf to act on the recommendation" – thus, quite far from a "Class of One." There simply is no basis for a Class of One claim under such facts.

In sum, Plaintiff fails to plausibly allege that any of the Individual Defendants – let alone all of them – violated Norris' Fourteenth Amendment rights.

5.   <u>With or without qualified immunity, Count V must be dismissed because Plaintiff is not a proper party under the statute at issue.</u>

In the Amended Complaint, Plaintiff has added a purported cause of action under the Civil Rights of Institutionalized Persons Act (CRIPA), 42 U.S.C. §§ 1997a – 1997j. Simply put, CRIPA does not bestow a private right of action to inmates for constitutional violations in state prisons (or anywhere else). Instead, § 1997a of CRIPA confers such standing upon the Attorney General of the United States only. *See* 42 U.S.C. § 1997a(a) ("the Attorney General, for or in the name of the United States, may institute a civil action in any appropriate United States district court against such party for such equitable relief as may be appropriate . . ."). In other words, CRIPA was enacted primarily to ensure that the United States Attorney General has 'legal standing to enforce existing constitutional and Federal statutory rights of institutionalized persons.'" *Patsy v. Fla. Bd. of Regents*, 457 U.S. 496, 507-08 (1982) (quoting H.R. Conf.Rep. No. 96-897, 9 (1980) U.S.C.C.A.N 1980, p. 787, 833); *see also United States v. Com. of Pa.*, 902 F. Supp. 565, 578-79 (W.D. Pa. 1995), *aff'd sub nom. United States v. Ridge*, 96 F.3d 1436 (3d

Cir. 1996) ("The plain language of § 1997a(a) reveals that the statute simply confers standing upon the Attorney General") (citing *Patsy*).

Even though the above authority is sufficient to defeat Count V, Section 1997j of CRIPA makes the non-plausible nature of Plaintiff's claim even clearer. In the statute's "Disclaimer respecting private litigation," it states in pertinent part, "[t]he provisions of this subchapter shall in no way expand or restrict the authority of parties other than the United States to enforce the legal rights which they may have pursuant to existing law with regard to institutionalized persons." 42 U.S.C. § 1997j. Plaintiff is a private citizen. Therefore, because the plaintiff is not the United States Attorney General, Count V must be dismissed with prejudice. This dismissal is warranted as to the Individual Defendants and the Commonwealth of Pennsylvania in equal measure, with or without qualified immunity.[3]

<u>6.</u>   <u>Count VI fails to allege an ADA claim against the Individual Defendants.</u>

Plaintiff sues the individual defendants under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134. Title II of the ADA prohibits discrimination "by reason of" a qualified individual's disability in the "services, programs, or activities of a public entity." 42 U.S.C. § 12132.

None of the individual defendants is plausibly alleged to be "public entities" within the meaning of ADA Title II. Nor could they be. *See Kokinda v. Pa. Dep't of Corr.*, 779 Fed.Appx. 938, 942 (3d Cir. 2019) (per curiam) ("claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability"); *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002) (stating, in dicta, "that individuals are not liable under Titles I and

---

[3] Although there is no viable claim under CRIPA in any scenario, Count V is discussed in Section IV.A primarily to show the lack of an actionable violation of a federal right (and to keep consistency between subheadings and the Counts at issue). Qualified immunity only applies to the Individual Defendants, of course, who as a matter of law cannot violate a federal right for which there is no private right of action.

II of the ADA" for discrimination); *Williams v. Hayman*, 657 F. Supp. 2d 488, 502 (D.N.J. 2008) ("Nearly every court that has addressed the question appears to have held that Title II does not authorize suits against government officers in their individual capacities.") (citing case law). *See also Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("neither Title II of the ADA nor . . . the Rehabilitation Act provides for individual capacity suits against state officials."); *Walker v. Snyde*r, 213 F.3d 344, 346 (7th Cir. 2000) ("there is no personal liability under Title II" for money damages); *Frederick L. v. Dep't of Pub. Welfare*, 157 F. Supp. 2d 509, 531 (E.D. Pa. 2001) ("as a general matter, suits brought against individuals in their individual capacities are not properly brought under the ADA . . .") (citing numerous cases). In light of the foregoing authority, Plaintiff cannot state an ADA claim against the Individual Defendants under any scenario.

In sum, Plaintiff has failed to allege that Defendants Wolf, Fetterman and Flood violated any of Norris' federal rights. For this reason alone, the individual defendants are entitled to qualified immunity. *See Pearson*, 555 U.S. at 236-37.

### B.      Defendants, in their individual capacities, are entitled to Qualified Immunity because there is no clearly established right to speedy clemency/commutation

Satisfying the second element of qualified immunity – that the right at issue was clearly established – is a two-step process. First, a court must "define the right allegedly violated at the appropriate level of specificity," meaning that it must be defined "in light of the case's specific context, not as a broad general proposition." *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 172 (3d Cir. 2017) (internal citation and quotation marks omitted). Second, once the right is defined, a court must "identify a case where an officer acting under similar circumstances" was held to violate the constitution. *White v. Pauly*, 137 S.Ct. 548, 552 (2017). The law does "not

require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

For each theory of liability, the plaintiff must articulate the particular right at issue and cite controlling authority clearly establishing that right, in this factual context, prior to January 30, 2021. It is not the defendant's burden to prove the absence of controlling authority. That said, Defendant are unaware of any authority holding that a state official could be liable under Section 1983 for a 41-day "delay" – *if* the time period between Dec. 19, 2020 and Jan. 30, 2021 constitutes a delay – in effectuating the clemency or commutation of a prison sentence. *Johnson v. Wetzel*, 2023 WL 4424828 (E.D. Pa. July 7, 2023), which is cited by Plaintiff (*see* Am. Compl., ¶¶ 12, 66), does not assist her in this inquiry. *Johnson*, in which the district court <u>granted</u> defendants' motion to dismiss, involved imprisonment beyond the plaintiff's "maximum sentence date" – *see id.* at *4. Nothing of the sort has been alleged in the present case and, even if it had been, an unpublished district court decision does not and cannot constitute "clearly established law."

Moreover, to the extent there is *relevant* clearly established law, it would seem to support qualified immunity. *See Montanez v. Thompson*, 603 F.3d 243, 253-54 (3d Cir. 2010) (reversing district court's denial of qualified immunity for PA-DOC officials' calculation error which led to plaintiff being incarcerated beyond his maximum incarceration date). Thus, the constitutional question here is not "beyond debate." *See al-Kidd*, 563 U.S. at 741.

As such, the Individual Defendants are entitled to qualified immunity, which is immunity from suit. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Consequently, Defendants Wolf, Fetterman, and Flood should be terminated as parties to this action.

## V.      CONCLUSION

For all the foregoing reasons, Defendants Commonwealth of Pennsylvania, Tom Wolf,

John Fetterman, and Brandon Flood respectfully request this Court grant their Motion to Dismiss

Plaintiff's Amended Complaint, in the form of Order appended hereto.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

Date: September 28, 2023          By:    */s/ Matthew Skolnik*

Matthew Skolnik
Senior Deputy Attorney General
Attorney I.D. No. 89423

Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
Phone: (215) 560-2136          Karen M. Romano
Fax:    (717) 772-4526          Chief Deputy Attorney General
mskolnik@attorneygeneral.gov          Civil Litigation Section

*Counsel for Defendants*

16

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew Skolnik, hereby certify that the foregoing Defendants' Motion to Dismiss Amended Complaint, with supporting papers, has been filed electronically on September 28, 2023 and is available for viewing and downloading from the Court's Electronic Case Filing system by all counsel of record.

Date: September 28, 2023          By:    */s/ Matthew Skolnik*
                                         _____
                                         Matthew Skolnik
                                         Senior Deputy Attorney General