IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JANICE STEWART, INDIVIDUALLY, AND AS AMIN. OF THE ESTATE OF BRUCE NORRIS, DECEASED,** *Plaintiff* <br><br> v. <br><br> **COMMONWEALTH OF PENNSYLVANIA et al.,** *Defendants* | **CIVIL ACTION** <br><br> **NO. 23-295** |

### MEMORANDUM

**Baylson, J.**                                                                                    **January 4, 2024**

I. **Alleged Facts**

Plaintiff Bruce Norris was a prisoner in the custody of the Pennsylvania Department of Corrections until his death on January 30, 2021. Pl. Amend. Compl. ¶ 10, ECF 13. Plaintiff had spent the prior 45 years in prison. Id.

Defendant Tom Wolf was the Governor of Pennsylvania at the time. Defendant John Fetterman was the Chairman of the Pennsylvania Board of Pardons and Defendant Brandon Flood was the Secretary of the Pennsylvania Board of Pardons. Id. at ¶¶ 4–6.

On December 11, 2020, The Board approved Plaintiff's application for commutation of his prison sentence.[1] Id. at ¶ 11. Plaintiff alleges that the three individual Defendants were aware of Mr. Norris's increased risk of contracting COVID-19 while incarcerated and his specific comorbidities as a result of the commutation review process. Id. ¶¶ 13–14. Despite the Board's

---

[1] Counsel clarified at oral argument that the Board recommended commutation.

1

recommendation, the Governor, who has the ultimate say-so on granting or denying the application, did not decide on Mr. Norris's recommendation until February 24, 2021.[2]

Plaintiff became infected with COVID-19 while housed in a two-person cell at SCI Phoenix. Amend. Compl. at ¶ 15. He died on January 30, 2021. Id.

## II.     Procedural History

Plaintiff, through his estate, filed suit on January 24, 2023,[3] against the three individual Defendants for violating a host of constitutional[4] and statutory violations. He also sues Pennsylvania for violating two federal laws. While the legal bases of liability differ, the factual nucleus at heart of them is the same. Because the Board of Pardons recommended the Governor commute Plaintiff's sentence on December 11, 2020, he accrued a liberty interest in release as of that day. Defendant Wolf's delay in reviewing and signing the official order of release, Plaintiff argues, led to an illegal continued detention in prison, which resulted in his death from COVID-19 on January 30, 2021.

Defendants filed a Motion to Dismiss all but one of the claims on September 28, 2023.[5] Def. Mot. to Dismiss, ECF 16. In it, Defendants argue the delay between the Board's recommendation and the Governor's action is entirely within the Governor's discretion under Pennsylvania law and does not make out a plausible legal violation. Id. at 5–6. Additionally, Defendants assert immunity because any hypothetical federal right was not "clearly established"

---

[2] The Court takes judicial notice of the Board of Pardons' publication of recommendation and pardon decisions, required per Pennsylvania statute. 37 Pa. Code § 81.304; Lifer Cases Granted Public Hearings (1997 to Present), PA. BD. OF PARDONS, https://perma.cc/7S2A-LVUW (last visited Dec. 18, 2023).
[3] Plaintiff filed an Amended Complaint on July 28, 2023.
[4] 42. U.S.C. § 1983 allows Plaintiff to recover damages against state actors who violated his constitutional rights.
[5] Defendants have not moved for dismissal of Plaintiff's Title II American with Disabilities Act claim against Pennsylvania.

when Mr. Norris passed away. Id. at 14–15. In response, Plaintiff argues the "sclerotic [i.e., rigid and unresponsive] machinations" of the Board's commutation process render Defendants liable. Pl. Reply 4, ECF 22.

### III.  Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). To survive the motion, a plaintiff must "plead 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). At the same time, the Third Circuit favors substance over form—"a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d at 213 (internal citations and quotations omitted).

### IV.  Discussion

Whether the claim is styled as an Eighth, Fourth, or Fourteenth Amendment violation, the central legal question is whether the Board of Pardon's recommendation constituted a vested liberty interest that entitled Mr. Norris to release or procedural protection. Under Pennsylvania law, Mr. Norris could not be released until Defendant Wolf signed the Board's recommendation. Pa. Const. art. IV, § 9.

**A. The Constitutional Claims**

Overdetention claims are cognizable in the Third Circuit. A string of cases beginning in the late 1980s addressed prisoners who claimed they remained incarcerated after their official release. See Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1989). When continued detention is "totally without penological justification," it is subject to Eighth Amendment analysis. Sample, 885 F.2d at 1108. A sentence is without "penological justification" when an individual is held beyond his release date. Moore v. Tartler, 986 F.2d 682, 686 (3d Cir. 1993).

If a plaintiff can establish that he was held without "penological justification," he must prove the responsible officials acted with "deliberate indifference" to his plight. Id. To do so, a plaintiff must prove, first, "that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted," second, "that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight," and, third, that there was "a causal connection between the official's response to the problem and the infliction of the unjustified detention." Sample, 885 F.2d at 1110.

On the other hand, the Supreme Court has held that a prisoner has no protected constitutional right in clemency or pardon proceedings after he has been lawfully convicted. Two cases are instructive. In Connecticut Bd. of Pardons v. Dumschat, the Supreme Court held that a prisoner held no protected liberty interest in a commutation or pardon, because it is "simply a unilateral hope." 452 U.S. 458, 465 (1981). The Court said, "the mere existence of a power to commute a lawfully imposed sentence . . . create[s] no right or entitlement." Dumschat, 452 U.S. at 467. On the other hand, when a state, by statute, has established mandatory post-conviction parole reviews of sentences, prisoners do gain an entitlement or right subject to due process

4

protections. Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 11–16 (1979) (holding Nebraska statute that stated prisoners "shall" receive a parole review created due process right); Board of Pardons v. Allen, 482 U.S. 369, 378 (1987) (holding that any statute that allows parole upon finding that a prisoner has met certain conditions creates entitlement).

In Pennsylvania, the power of commutation is entirely within the discretion of the Governor. Com. v. Michael, 56 A.3d 899, 903 (Pa. 2012). The Pennsylvania Constitution lays out the commutation process, which states that the Governor may commute or pardon any sentence after a favorable recommendation from the Board of Pardons. Pa. Const. art. IV, § 9. The recommendation, "with the reasons therefor at length, shall be delivered to the Governor and a copy thereof shall be kept on file in the office of the Lieutenant Governor in a docket kept for that purpose." Id. Neither Pennsylvania's Constitution nor statutes provide any criteria that an individual is entitled to commutation or pardon. And under Supreme Court precedent, the denial of commutation or pardon is not subject to constitutional scrutiny. See Greenholtz, 442 U.S. at 12. Unlike a mandated parole scheme, discretionary commutation, as a prisoner's "unilateral hope," does not create a cognizable liberty interest. Dumschat, 452 U.S at 465.

For this reason, Plaintiff's central grievance does not merit constitutional protection. While Mr. Norris's death is tragic, especially in light of the Governor's belated desire to commute his sentence, he cannot sue for a liberty interest he never accrued. As Plaintiff's counsel conceded (which this Court commends), Mr. Norris's claim does not fall under the overdetention precedent where an individual remains in custody after an official release date. See Montanez v. Thompson, 603 F. 3d 243, 250 (3d Cir. 2010). As discussed, a "prisoner has no liberty interest in the possibility of commutation," and, per the Pennsylvania Constitution, until the Governor acts upon the Board's recommendation, commutation remains just that, a possibility. Hennessey v. Pennsylvania Bd. of

5

Pardons, 655 A.2d 218, 220 (Pa. Commw. Ct. 1995) (citing McCrery v. Mark, 823 F. Supp. 288 (E.D. Pa. 1993) (Pollak, J.))[6]

Most recently at oral argument, Plaintiff appeared to have narrowed his claim substantially. Acknowledging that no law or policy mandated Mr. Norris's release, Plaintiff pointed out that Pennsylvania law required the Board to send its recommendation to all "interested parties" within 14 days of that decision. 37 Pa. Code § 81.302. Assuming the Governor is an "interested party," Plaintiff rests his claims on the Board's potential delay of timing.

Without more, this Court cannot assign the same weight to the statute. For one, Plaintiff does not allege the Board failed to send the recommendation within fourteen days—rather, he does not know the date. But even if he did allege this violation, that breach does not warrant protection under the federal constitution. In "any analysis of a due process claim," the first question is "whether plaintiffs have a liberty or property interest in the benefit that the state took away." Mullen v. Thompson, 155 F. Supp. 2d 448, 451 (W.D. Pa. 2001) (citing Paul v. Davis, 424 U.S. 693, 711–12 (1976)). And as discussed, *supra*, prisoners do not have a cognizable right to commutation of a lawfully imposed sentence. Moreover, even if a commutation right attached in some exceptional circumstances, a de minimis delay in sending a non-binding recommendation to

---

[6] To be sure, the Supreme Court has commented that "minimal procedural safeguards" may apply to clemency or commutation proceedings when an individual seeks reprieve from capital punishment. Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 289 (1998) (O'Connor, J., concurring) (emphasis in original). Even were that dicta binding precedent, it is not applicable in the current suit because Mr. Norris was not sentenced to death. Id. Moreover, Justice O'Connor speculated that even in applicable cases, judicial intervention "might" only be warranted when clemency procedures are as arbitrary as the flip of a coin. Id. Plaintiff has not pled any comparable facts.

the Governor—who retained complete discretion to accept or reject the commutation—does not compel this Court to plod new constitutional tracks.[7]

For these reasons, Plaintiff's constitutional claims fail. Defendants did not violate the Fourth Amendment because Mr. Norris's lawful incarceration was reasonable. Similarly, they could not violate the Eighth or Fourteenth Amendment because Mr. Norris never gained a protected liberty interest in commutation before his death.[8]

**B. The Statutory Claims**

The Civil Rights of Institutionalized Persons Act ("CRIPA") confers standing upon the Attorney General to initiate lawsuits on behalf of prisoners for flagrant violations of law. 42 U.S.C. §§ 1997a–j; see United States v. Com. of Pa., 902 F. Supp. 565, 578 (W.D. Pa. 1995), aff'd sub nom. United States v. Ridge, 96 F.3d 1436 (3d Cir. 1996); Patsy v. Florida Bd. of Regents, 457 U.S. 496, 507–08 (1982) ("[CRIPA] . . . was enacted primarily to ensure that the United States Attorney General has legal standing to enforce existing constitutional rights and Federal statutory rights of institutionalized persons."). CRIPA does not create new substantive liability. It is "merely

---

[7] This Court finally notes that 37 Pa. Code § 81.302 is only tangentially related to the prisoner's alleged liberty interest in release. The law does not affect the substantive determination at heart of a prisoner's application for relief, but rather guides the internal timeline for a discretionary review. In other words, this law does not affect the substantive evaluation of the prisoner's claim. Under binding law, the dispositive feature when evaluating whether state law creates protected liberty interest for a prisoner is whether language "place[s] substantive limitations on official discretion" through "substantive predicates" that govern official decision-making. Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 462, (1989) (internal citations and quotations omitted). Here, the timing statute leaves the Governor's actual discretionary power to commute untouched.

[8] Plaintiff passingly references the conditions of Mr. Norris's confinement in his Complaint, however, the Court cannot reasonably construe his legal claim as an Eighth Amendment conditions of confinement claim. Even if the Complaint did allege sufficient facts for such violation, the Court would still dismiss them because, as Plaintiff's counsel admitted to this Court, none of the named individual Defendants were responsible for his housing conditions. Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007) (holding that defendants in civil rights action "must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.") (internal citations and quotations omitted).

a standing statute giving [the Attorney General] the right to bring suit but not affecting the standard of proof at trial." United States v. Pennsylvania, 863 F. Supp. 217, 218 (E.D. Pa. 1994) (Newcomer, J.).

Because Plaintiff is not a representative of the Attorney General's office, he cannot sue under CRIPA and the claim must be dismissed.

Under Title II of the American with Disabilities Act ("ADA") a public entity cannot discriminate based on an individual's disability in extending benefits of "services, programs, or activities of [the] public entity." 42 U.S.C. § 12132. While the Third Circuit has not conclusively stated whether Title II claims are cognizable against individuals, rather than exclusively entities, unpublished Circuit opinions and overwhelming in-Circuit district court decisions mandate this conclusion. Kokinda v. Pennsylvania Dep't of Corr., 779 F. App'x 938, 942 (3d Cir. 2019) ("individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability."); See also Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) (same); Datto v. Harrison, 664 F. Supp. 2d 472, 489 (E.D. Pa. 2009) (collecting cases holding the same) (McLaughlin, J.).

Individual Defendants move to dismiss Plaintiff's Title II claim. This Court is persuaded that Title II ADA claims are non-cognizable against individuals and will dismiss these claims against Defendants Wolf, Fetterman, and Flood.

This Court notes that Defendants did not move to dismiss Plainitff's Title II claim against the Commonwealth, which alleges in part that Mr. Norris's confinement conditions violated the ADA. As such, this sole claim will proceed to discovery.

8

**C. Qualified Immunity**

Qualified immunity shields state actors sued in their individual capacity under § 1983 when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Mann v. Palmerton Area Sch. Dist., 872 F.3d 165, 170 (3d Cir. 2017). The immunity analysis is twofold: the court must determine (1) whether a constitutional or statutory violation exists and (2) whether that right was clearly established at the time of injury. Id. As such, state actors may successfully avoid liability when they are alleged to have violated a constitutional right, so long as it was not clearly established. See Sauers v. Borough of Nesquehoning, 905 F.3d 711, 715 (3d Cir. 2018) (holding that the plaintiff's complaint alleged a constitutional violation against state actors, while dismissing the claim because the violation was not clearly established at the time of injury).

This Court concludes that no constitutional right or federal law was violated by the individual Defendants. Nonetheless, assuming Plaintiff did plausibly allege a violation stemming from the commutation process, Defendants Wolf, Fetterman, and Flood are immune from suit. The claim in this suit, as counsel stated in oral argument, is "brand new." Moreover, neither this Court, nor either party found precedent—binding or persuasive—holding prisoners have a protected liberty interest in discretionary commutation. See Kisela v. Hughes, 584 U.S. --, 138 S. Ct. 1148, 1153 (2018) (reiterating that the "right" must be defined "clearly" and not "at a high level of generality"). Thus, when faced with a matter of first impression, this Court must find that any plausible violations were not "clearly established" to anyone "but the plainly incompetent." White v. Pauly, 580 U.S. 73, 79 (2017).

**V.   Conclusion**

For the foregoing reasons, Defendants Motion to Dismiss is **GRANTED**.

9